McCORD, Judge.
This is a garnishment action. Appellee, Deborah Holland, was injured in an accident while riding as a guest passenger in a Cadillac automobile being driven by one Ian Craw. The only disagreement between the parties relates to the amount of insurance coverage available to satisfy the judgment which was entered in said appellees favor in the amount of $30,000. The judgment was entered by consent of the parties but with the proviso that if only $10,000 insurance coverage was available, payment of that sum would constitute full satisfaction of the judgment. The trial court found the amount of insurance coverage to have been in excess of $30,000. Appellant having paid $10,000, the trial court entered judgment against appellant for $20,000. This appeal is from that judgment.
The insurance problem arose from the fact that the Cadillac driven by Ian was owned by his brother, James, and was registered in the name of his father, Joseph. On the day of the accident, April 16, 1972, Ian and James had exchanged cars. James had loaned his Cadillac to Ian and had borrowed Ian’s Pinto in exchange. Joseph had originally owned the Cadillac but had given it to James several months before the accident. James had covered the vehicle with insurance but it was limited to $10,000-$20,000 liability. Joseph, however, owned a Chevrolet on which he had $100,000-$300,000 liability limits. Appel-lees contend that the policy on the Chevrolet covers this accident. State Farm companies had the coverage on both automobiles.
The sole question in this case is whether or not the Cadillac was a “non-owned automobile” under the policy covering the Chevrolet. If not, only the $10,000 which has been paid is recoverable. If so, the trial judge was correct in entering judgment against appellant for the additional $20,000.
The policy in question defines non-owned automobile as follows:
“ . . . an automobile or trailer not (i) owned by, (ii) registered in the name of, or (iii) furnished or available for the frequent or regular use of the named insured, his spouse, or any relative of either residing in the same household, other than a temporary substitute automobile.”
The parties have entered into a stipulation as to the facts. The father, Joseph, purchased the Cadillac on June 29, 1971, for his son, James. The title was made out to Joseph and was registered at the State Division of Motor Vehicles, Tallahassee. Joseph later delivered the car to James and signed the title over to him before a notary. The title, however, was never registered at the Motor Vehicle Division and at the time of the accident, the title was still registered in Joseph’s name.
James, who was over twenty-one years of age, was a student in England for approximately a year prior to 1970. In 1970, he worked for several months in Ecuador before marrying there in November, 1970. At that time, his parents lived in a rented apartment in Jacksonville, Florida. James stayed with his wife’s parents in Ecuador for a week or two following the marriage *102 and worked for an oil company there. He and his bride then went to Jacksonville and stayed with his parents in the apartment until shortly before Christmas, 1970, when they returned to the home of his wife’s parents in Ecuador. In January, 1971, they returned to Jacksonville and stayed with James’ parents until September, 1971. James was attending Jones College. At that time, his parents purchased a house in Jacksonville and James and his wife moved with them into the house. During that summer, James’ wife returned to Ecuador pregnant with a child who was born in approximately September, 1971. James returned to Ecuador in September to be with his wife and child and stayed there with her 'parents until mid-October, 1971, at which time he returned to Jacksonville and Jones College until December, 1971. At that time, he returned to Ecuador to spend the Christmas holidays and to bring his wife and child back to Jacksonville. They returned in January, 1972, and again stayed with James’ parents and were living there when the accident occurred on April 16, 1972. In June, 1972, James completed his school work and he and his wife and child went to Ecuador and stayed with his wife’s parents.
There is no disagreement that the policy on the father’s Chevrolet covered young Ian, a resident of his Father’s household in his use of the Cadillac if it was a “non-owned” automobile as defined by the insurance policy covering the Chevrolet. But was it a “non-owned” automobile? We do not consider that it comes within the policy definition of that term for two reasons, either of which rules it out. First, it is specifically ruled out because the Cadillac was registered in Joseph’s name, the named insured in the Chevrolet policy; and second, the Cadillac was owned by James who was a relative residing in the same household. It was certainly available for his frequent or regular use.
Appellee contends that James was not residing in the same household with his father; that he was there only temporarily and was residing in Equador. From the stipulated facts, we do not reach such conclusion. James had lived in the same household with his father, mother, brother and wife from approximately November, 1970, until the date of the accident, April 16, 1972, and he continued to live there until June, 1972. The only breaks in that period were visits at the home of his wife’s parents in Equador for Christmas, 1970, and 1971, and upon the birth of his child in September, 1971. There is no indication in the record that he owned a home in Equa-dor. His visits there were always to the home of his wife’s parents. He was clearly residing in the same household with his father in Jacksonville at the time of the accident. See General Guaranty Insurance Company v. Broxsie, Fla.App. (1st) 239 So.2d 595.
Reversed and remanded with instructions to enter judgment in accordance with the ruling here made.
RAWLS, C. J., and JOHNSON, J., concur.